# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

YOLIE PEREZ,

    Plaintiff,

v.

KILOLO KIJAKAZI,

    Defendant.

Case No. 2:22-cv-02014-NJK

**ORDER**

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for supplemental security income pursuant to Title XVI of the Social Security Act.[1]  Currently before the Court is Plaintiff's motion to reverse or remand.  Docket No. 16.  The Commissioner filed a response and cross-motion to affirm.  Docket Nos. 18, 19.  Plaintiff filed a reply to the Commissioner's response.  Docket No. 22.

**I.   STANDARDS**

    A.   Disability Evaluation Process

The standard for determining disability is whether a social security claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(3)(A). That determination is made by following a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). The first step addresses whether the claimant

---

[1] Plaintiff also originally applied for disability insurance benefits pursuant to Title II. A.R. 62, 222 . At her hearing, she amended her alleged onset date from September 12, 2012, to March 20, 2019. *Id.* This amendment placed her disability onset date outside of her insured status period, meaning she could not qualify for Title II benefits. *Id.*

is currently engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] The second step addresses whether the claimant has a medically determinable impairment that is severe or a combination of impairments that significantly limits basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). The third step addresses whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. There is then a determination of the claimant's residual functional capacity ("RFC"), which assesses the claimant's ability to do physical and mental work-related activities. 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step addresses whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth step addresses whether the claimant is able to do other work considering the residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

### B. Judicial Review

After exhausting the administrative process, a claimant may seek judicial review of a decision denying social security benefits. 42 U.S.C. § 405(g). The Court must uphold a decision denying benefits if the proper legal standard was applied and there is substantial evidence in the record as a whole to support the decision. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is "more than a mere scintilla," which equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.*

## II. BACKGROUND

### A. Procedural History

On March 21, 2019, Plaintiff filed an application for Social Security Disability Insurance benefits pursuant to Title II and Supplemental Security Income pursuant to Title XVI of the Social

---

[2] The five-step process is largely the same for both Title II and Title XVI claims. For a Title II claim, however, a claimant must also meet insurance requirements. 20 C.F.R. § 404.130.

Security Act. Administrative Record ("A.R.") 519-532. Plaintiff alleged a disability starting September 12, 2012. *Id.*; A.R. 62. Plaintiff's initial application was denied in October 2019. A.R. 319. She then filed a request for reconsideration, A.R. 405-406, which was denied, A.R. 304. On March 20, 2020, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") regarding her benefits determination. A.R. 420-21.

ALJ Gregory Moldafsky held a hearing on April 12, 2021. A.R. 218-240. At the hearing, Plaintiff amended her alleged disability onset date to March 20, 2019. A.R. 62, 222. On July 7, 2021, the ALJ issued a decision denying Plaintiff benefits. A.R. 59-80. Plaintiff subsequently filed a request for review by the Appeals Council. A.R. 512-518. On June 22, 2022, the Appeals Council denied Plaintiff's request to review the ALJ's decision, A.R. 9-15, making it the final decision of the Commissioner. *See* 42 U.S.C. § 405(g). The instant case was filed on August 12, 2022. Docket No. 1.

B.     The Decision Below

The ALJ's decision followed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920. A.R. 62-80. Because Plaintiff amended her alleged disability onset date to March 19, 2020, she lost her disability insured status and was no longer eligible for Disability Insurance Benefits pursuant to Title II. A.R. 62. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from May 20, 2019, through the date of the opinion.[3] A.R. 65. At step two, the ALJ found that Plaintiff has the following severe impairments: transitional anatomy of the lumbar spine, degenerative disc disease of the lumbar spine, osteoarthritis of the right knee, morbid obesity, lymphedema, chronic peripheral venous hypertension, major depressive disorder, and generalized anxiety disorder. A.R. 66. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals

---

[3]     Plaintiff previously applied for supplemental security income pursuant to Title XVI and was adjudicated to be not disabled through December 26, 2017. A.R. 63. The previous opinion creates a presumption of ongoing non-disability that Plaintiff must rebut. *See, e.g.*, *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988); SSAR 97-4(9) (Dec. 3, 1997). Here, the ALJ found that Plaintiff rebutted the presumption of non-disability and that the record contained new and material evidence such that the previous opinion's findings should not be given controlling effect. A.R. 63. Neither Plaintiff nor the Commissioner challenges this finding. *See* Docket Nos. 16, 19.

3

the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. A.R. 67-70.  The ALJ found that Plaintiff has the residual functional capacity to perform sedentary work as defined by 20 C.F.R. § 404.1567(a) except that she can: (1) occasionally climb ramps and stairs; (2) occasionally stoop, balance, kneel, and crouch; (3) never climb ladders, ropes, or scaffolds; (4) never crawl; (5) never work at unprotected heights or with dangerous moving machinery; (6) occasionally be exposed to extreme heat or extreme cold; (7) carry out only simple, routine tasks in a work environment that is not fast paced and that does not have strict production quotas; (8) have only incidental interaction with the general public and occasional interaction with coworkers and supervisors; (9) work only in a job where changes in work setting or processes are no more than occasional and where the individual job responsibilities are performed without close teamwork, tandem work, or over the shoulder supervision; and (10) requires a walker for ambulation during the workday.  A.R. 70-78.  At step four, the ALJ found that Plaintiff is unable to perform her past relevant work as a home attendant.  A.R. 78-79.  At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, based on Plaintiff's age, education, work experience, and residual functional capacity.  A.R. 79-80.  The ALJ considered the Medical Vocational Rules, which provide a framework for finding Plaintiff disabled or not.  In addition to considering the Medical Vocational Rules, the ALJ took testimony from a vocational expert that an individual with the same residual functional capacity and vocational factors as Plaintiff could perform work as a document preparer, addresser, and escort vehicle driver.  *Id.*  In doing so, the ALJ noted that Plaintiff was defined as a younger individual age 18-44 on the alleged disability onset date.  A.R. 79.  The ALJ found that Plaintiff has at least a high school education and further found the transferability of job skills to be immaterial.  *Id.*  Based on these findings, the ALJ found Plaintiff not disabled from March 10, 2019, through the date of decision.  A.R. 80.

**III.    ANALYSIS**

Plaintiff raises two issues on appeal.  She submits that the ALJ failed to properly evaluate the medical opinion of consultative examiner Dr. Mark Short, Psy.D., and that the ALJ failed to properly evaluate Plaintiff's subjective symptom testimony.  Docket No. 19 at 5-20.

4

A.     The ALJ's Evaluation of Dr. Mark Short's Medical Opinion Evidence

Plaintiff submits that the ALJ failed to properly evaluate the medical opinion of consultative examiner Dr. Short. Docket No. 16 at 5-15. The Commissioner submits that "[t]he ALJ properly evaluated consultative examiner Dr. Short's opinion based on the supportability and consistency factors required in the regulations." Docket No. 19 at 5 (internal citations omitted).

When evaluating medical evidence, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R § 404.1520c(a). The ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" based on certain specified factors. *Id.* The most important factors are supportability and consistency, which the ALJ must address. 20 C.F.R. § 404.1520c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.' Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. §§ 404.1520c(c)(1) & (c)(2)). An ALJ may, but is not required to, address the remaining provided factors. 20 C.F.R. § 404.1520c(b).

Reviewing courts must affirm an ALJ's evaluation of evidence in the record if it is supported by substantial evidence. *See Woods*, 32 F.4th at 787, 793. When determining whether a decision is supported by substantial evidence, courts "look[] to all the pages of the ALJ's decision." *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022); *see also Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (noting that Ninth Circuit case law "simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings'" (internal quotation omitted)). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Further, when "the evidence is susceptible to more than one rational interpretation, this [C]ourt must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Khan v. Saul*, 855 Fed. App'x 343, 345 (9th Cir.

5

2021) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)). *See also Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion"); *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision (internal citations omitted)).

The Court finds that the ALJ properly evaluated the supportability and consistency of Dr. Short's opinion. Plaintiff submits that the ALJ's evaluation of Dr. Short's opinion was erroneous because he failed to fully adopt Dr. Short's limitations that Plaintiff has "(1) moderate difficulty interacting with others, (2) significant difficulty responding appropriately to work pressure in a work setting in coordination and in close proximity to others without conflict, distress, confusion, or distraction, and (3) [that Plaintiff does not] retain sufficient cognitive resources to sustain even simple employment at this time." Docket No. 16 at 9 (internal citation omitted).

First, the ALJ limited Plaintiff to incidental contact with the general public and work without close teamwork or supervision requirements. *See* A.R. 70. This limitation does not directly track Dr. Short's observation that Plaintiff would have "moderate difficulty interacting with supervisors, peers, and the public." A.R. 702. The residual functional capacity determination does not need to copy the exact opinion of any particular doctor; instead "the ALJ is responsible for translating and incorporating clinical findings into a succinct" residual functional capacity. *Rounds v. Commissioner*, 795 F.3d 1177, 1185-86 (9th Cir. 2015), *as amended*, 807 F.3d 996, 1005-06 (9th Cir. 2015). Moreover, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld" *Shaibi*, 883 F.3d at 1108 (internal quotation omitted). Despite Plaintiff's assertions to the contrary, the ALJ's incorporation of these limitations into Plaintiff's RFC shows that he considered and gave weight to that portion of Dr. Short's opinion, even if he did find portions of the opinion otherwise internally inconsistent. *Cf. Magallanes*, 881 F.2d at 755.

1          Plaintiff next submits that the ALJ erred by finding Dr. Short's opinion internally
2   inconsistent for opining that Plaintiff would have "moderate difficulty interacting with supervisors,
3   peers, and the public (others)" but also that she would have "significant difficulty responding
4   appropriately to work pressure in work settings in coordination and in close proximity to others
5   without conflict, distress, confusion, or distraction."  Docket No. 16 at 10 (citing A.R. 702).
6   Plaintiff submits that this was error because the former limitation deals exclusively with interacting
7   with others whereas the latter limitation addresses Plaintiff's ability to respond to pressure in the
8   workplace while interacting with others.  *Id.*  Plaintiff draws too narrow of a distinction.  Both
9   limitations address Plaintiff's ability to interact with others.  Many, if not most, interactions in a
10  workplace are accompanied by some amount of pressure.  However, Dr. Short declined to define
11  both "moderate" and "significant."  Considering that the two limitations substantially overlap and
12  that Dr. Short failed to address this fact, the Court finds that the ALJ's finding that this portion of
13  the opinion was internally inconsistent is supported by substantial evidence.  *Cf. Shaibi*, 883 F.3d
14  at 1108 (internal quotation omitted) ("As we cannot say that the ALJ's interpretation of the
15  available evidence was not rational, the ALJ's conclusions were supported by substantial
16  evidence").  *See also Jackson v. Kijakazi*, 2023 WL 2016869, at *4 (D. Nev. Feb. 14, 2023)
17  (upholding an  ALJ's finding that Dr. Short's usage of these limitations was internally
18  inconsistent).
19         Plaintiff next submits that the ALJ erred by finding Dr. Short's opinion that Plaintiff lacks
20  "sufficient cognitive resources to sustain even simple employment" inconsistent with other
21  portions of the opinion and with the record as a whole  Docket No. 16 at 10 (citing A.R. 77).  Dr.
22  Short opined that Plaintiff "could probably understand and remember a few simple but not detailed
23  instructions and could carry out some simple but not detailed tasks."  A.R. 702.  Dr. Short further
24  observed that Plaintiff would be "unable to sustain attention and concentration for most complex
25  and detailed tasks without supervision" but that "[s]he could probably sustain attention and
26  concentration for simple but not for detailed tasks with without special supervision."  *Id.*  Dr. Short
27  also noted that Plaintiff "seemed cognitively able to adhere to basic standards of neatness and
28  cleanliness."  *Id.*  After opining that Plaintiff possessed the mental capacity to perform simple tasks

without supervision, Dr. Short stated that Plaintiff "appears not to retain sufficient cognitive resources to sustain even simple employment." A.R. 703. Dr. Short failed, however, to reconcile these contradictory observations. Consequently, it was rational for the ALJ to find this portion of Dr. Short's opinion internally inconsistent, and the Court must uphold that interpretation. *Cf. Shaibi*, 883 F.3d at 1108 (internal quotation omitted).

Plaintiff further submits that the ALJ's supportability and consistency analysis was erroneous because the ALJ provided minimal pin cites in his evaluation of Dr. Short's opinion. *See* Docket No. 16 at 11. Plaintiff repeats this submission to challenge the ALJ's supportability and consistency analysis of Dr. Short's entire opinion. *See id.* at 12-14. When reviewing an ALJ's decision, the Court must look to the entirety of the decision. *Kaufmann*, 32 F.4th at 851; *Kennedy*, 738 F.3d at 1178. Here, the ALJ conveniently directed readers to his findings in a previous portion of his opinion. A.R. 75 ("As detailed in Finding 3, above, the record as a whole shows the claimant is not more than moderately limited in any one area of functioning"). In Finding 3, the ALJ reviews Dr. Short's opinion alongside other evidence in the record, including references to the specific evidence he considered. A.R. 69 (citing A.R. 554-61, 698-701, 748, 752, 754, 874, 880, 1251-52). In short, the Court finds that the ALJ's evaluation of Dr. Short's medical opinion is supported by substantial evidence.

B.   The ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony

Credibility and similar determinations are quintessential functions of the judge observing witness testimony, so reviewing courts generally give deference to such assessments. *See, e.g.*, *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986). In the Social Security context, "[t]he ALJ is responsible for determining credibility." *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995). An ALJ's assessment of a claimant's testimony is generally afforded "great weight" by a reviewing court. *See, e.g.*, *Gontes v. Astrue*, 913 F. Supp. 2d 913, 917-18 (C.D. Cal. 2012) (citing *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Circ. 1989) and *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985)). If an ALJ's determination to discount a claimant's testimony is

supported by substantial evidence, a court should not second-guess that determination. *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).[4]

The ALJ is required to engage in a two-step analysis to evaluate a claimant's testimony as to pain and other symptoms: (1) determine whether the individual presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of pain or other symptoms alleged; and (2) if so, whether the intensity and persistence of those symptoms limit an individual's ability to perform work-related activities. *See* Social Security Ruling 16-3p, 2017 WL 5180304. In the absence of evidence of malingering, an ALJ may only reject a claimant's testimony about the severity of symptoms by giving specific, clear, and convincing reasons. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Factors that an ALJ may consider include inconsistent daily activities, an inconsistent treatment history, and other factors concerning the claimant's functional limitations. *See* Social Security Ruling 16-3p, 2017 WL 5180304.

Plaintiff submits that the ALJ erred because he referenced the inconsistencies of Plaintiff's subjective symptom testimony with the objective symptom evidence in Plaintiff's longitudinal record. Docket No. 16 at 17. The Commissioner submits that "the ALJ reasonably determined that Plaintiff's allegations were not fully consistent with the objective medical evidence." Docket No. 19 at 14. The ALJ properly considered the objective medical evidence in the record when discounting Plaintiff's symptom testimony. "When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022). Further, when discounting Plaintiff's symptom testimony, "the 'clear and convincing' standard requires the ALJ to show his work." *Id.* at 499. "The standard isn't whether [the C]ourt is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id.* Here, the ALJ pointed to specific evidence in the record that contradicted Plaintiff's symptom testimony. For example, the

---

[4] The regulations previously asked the ALJ to assess "credibility." Social Security Ruling 96-7p. The current regulations require the ALJ to instead "evaluate" the claimant's statements. Social Security Ruling 16-3p. This change does not alter the deferential nature of the Court's review.

9

ALJ noted that, despite Plaintiff's claimed social limitations, she appeared able to interact with others on multiple occasions. A.R. 75 (citing A.R. 700, 748, 754, 874, 880, 1251). Further, the ALJ noted that, despite her claimed difficulty with maintaining her hygiene, Plaintiff routinely appeared clean and well-groomed. *Id.* (citing A.R. 698, 748, 754, 874, 880, 1251). The ALJ noted similar contradictions in the record for Plaintiff's mental functioning and daily activities. *See* A.R. 75-76. The Court, therefore, finds that it was not unreasonable for the ALJ to reference the inconsistencies between Plaintiff's subjective symptom testimony and the objective evidence in the record when discounting her testimony.

Plaintiff further submits that the ALJ erred in evaluating her subjective symptom testimony by failing to consider her tendencies to isolate and withdraw. Docket No. 16 at 17-18. The Commissioner submits that "the ALJ also reasonably found Plaintiff's subjective allegations to be inconsistent with her daily activities."[5] Docket No. 19 at 18 (internal citations omitted). As discussed above, when reviewing an ALJ's decision, the Court must look to the entirety of the decision. *Kaufmann*, 32 F.4th at 851; *Kennedy*, 738 F.3d at 1178. Though the ALJ did not explicitly discuss Plaintiff's tendencies to isolate and withdraw in his evaluation of her subjective symptom testimony, *see* A.R. 76, he did include limitations regarding her ability to interact with others in her RFC, *see* A.R. 70. The inclusion of limitations regarding Plaintiff's ability to interact with others in her RFC shows that the ALJ did consider her tendencies to withdraw and isolate from others. Such consideration provides substantial evidence to support this finding of the ALJ.

Plaintiff further submits that the ALJ erred by failing to properly consider her mental health treatment history when evaluating Plaintiff's subjective symptom testimony. Docket No. 16 at 18-19. Plaintiff first submits that the ALJ improperly noted that she had never received inpatient treatment for her mental health issues. *Id.* Plaintiff submits that noting her lack of inpatient treatment was error because she was never found to have a substantial likelihood of causing serious harm to herself or others. *Id.* Plaintiff cites Nevada Revised Statutes § 433A.0175 to support this

---

[5] The Commissioner's response to this argument is concerningly sparse. However, because it is abundantly clear from the record that Plaintiff's argument fails, the Court will address it on the merits. In the future, the Court expects the parties to carefully read the opposing party's brief and directly and substantively respond to the arguments raised therein.

proposition.[6] NRS § 433A.0175 defines "person in a mental health crisis" and requires that a "person presents a substantial likelihood of serious harm to himself or herself or others" to be deemed to be in a mental health crisis. Such a finding is necessary when someone is involuntarily placed into inpatient treatment by court order or on a mental health crisis hold. *See, e.g.*, Nev. Rev. Stat. §§ 433A.155 (petition to place person on mental health crisis hold); 433A.160 (procedure for placement on mental health crisis hold); 433A.162 (procedure for emergency admission of person placed on mental health crisis hold); 433A.200 (petition for involuntary admission); 433A.310 (findings for involuntary admission order). However, a person need not be in a mental health crisis or present a substantial risk of harm to herself or others to be voluntarily admitted to inpatient mental health treatment. *See* Nev. Rev. Stat. § 433A.140 (voluntary admissions to mental health facilities). Plaintiff could have sought inpatient mental health treatment at any time but did not do so. It was not, therefore, error for the ALJ to rely on the fact that Plaintiff has never sought inpatient mental health treatment when evaluating her subjective symptom testimony.

Plaintiff next submits that the ALJ erred by finding that her symptoms were stable when she was compliant with her medication. Docket No. 16 at 19. She submits that this was error because the ALJ improperly isolated evidence from her treatment records and because she has never been officially labeled as non-compliant with her medications. *Id.* The Commissioner responds that the ALJ properly considered Plaintiff's entire treatment record and that the record contains multiple annotations of her not taking her medications because she had failed to refill her prescriptions in time. Docket No. 19 at 16-18.

Regardless of whether the Plaintiff was ever formally labeled non-compliant with her medications, the ALJ pointed to instances in the record where she had failed to comply with her medication requirements. A.R. 76 (citing A.R. 745, 748, 871, 874, 877, 880). Because the ALJ's finding is supported by inferences reasonably drawn from the record, it is supported by substantial evidence. *See, e.g.*, *Batson*, 359 F.3d at 1193.

---

[6] Plaintiff also cites Nevada Revised Statutes § 433A.115 to support this submission. § 433A.115 states that it has been substituted by § 433A.0175.

Although the ALJ did point to specific evidence in the record to support his finding that Plaintiff's symptoms improve when she takes her medication, Plaintiff submits that the ALJ still erred by failing to consider treatment notes from May 2020 and September 2020. Docket No. 16 at 19. As an initial matter, the ALJ did consider the treatment note from May 2020. *See* A.R. 76 (citing A.R. 880). That treatment note, in turn, contains annotations that Plaintiff's affect appeared "flat" and "dysphoric" and that her mood was "anxious." A.R. 880. The note, however, also contains an annotation that Plaintiff had been off her Effexor for approximately a week prior to the appointment. *Id.* The ALJ did not explicitly reference the treatment note from September 2020 when evaluating Plaintiff's subjective symptom testimony. However, the ALJ is not required to discuss every piece of evidence in the record. Here, the ALJ discusses treatment notes both pre- and post-dating the September 2020 treatment note. *See* A.R. 76 (citing A.R. 745, 748, 871, 877, 880). Contrary to Plaintiff's submission, the ALJ did not "isolate portions of the record in support of his residual functional capacity" determination. Docket No. 16 at 19. The ALJ just did not discuss one piece of evidence among many other relevant items. It is the ALJ's responsibility to translate the medical evidence in the record, *Rounds*, 807 F.3d at 1005-06, and the Court must defer to the ALJ's translation, *Batson*, 359 F.3d at 1193. The Court therefore finds that the ALJ's evaluation of Plaintiff's subjective symptom testimony is supported by substantial evidence.

## IV.    CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's motion to remand, Docket No. 16, and **GRANTS** the Commissioner's countermotion to affirm, Docket No. 18. The Clerk's Office is instructed to **enter final judgment** accordingly and to **close** this case.

IT IS SO ORDERED.

Dated: August 16, 2023.

NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE